## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARK A. HESTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-14-418-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Mark A. Hester requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 18, 1965, and was forty-seven years old at the time of the administrative hearing (Tr. 42). He has an eleventh-grade education and past relevant work as a police officer, security guard, and auto body man (Tr. 29, 201). The claimant alleges inability to work since August 24, 2010, due to congenital hip dysplasia, anxiety, and depression (Tr. 201).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 29, 2010. His applications were denied. Following an administrative hearing, ALJ Jennie L. McLean found that the claimant was not disabled in a written opinion dated June 27, 2013 (Tr. 19-31). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found at step four that the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, that he could lift/carry/push/pull ten pounds occasionally and up to ten pounds frequently, sit for up to

six hours and stand or walk for up to two hours in an eight-hour workday, but that he could not climb ladders or ropes or scaffolds, balance, crouch, or crawl; and that he could only occasionally climb stairs and ramps, kneel, and stoop. Additionally, she determined that the claimant could not operate foot controls with the lower right extremity, but could use a cane with the right hand as necessary. Furthermore, she found that the claimant could perform only simple tasks with routine supervision and have no public contact and no customer service, but that he could interact appropriately with supervisors and co-workers on a superficial basis and adapt to work situations (Tr. 23). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, envelope addresser, electronics marker, and lamp shade assembler (Tr. 30).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate his RFC with regard to his obesity and low back pain, and (ii) by failing to properly evaluate his credibility. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant's dysplasia of the right hip and adjustment disorder with depressed mood to be severe impairments (Tr. 21). The medical evidence related to the claimant's physical impairments reveals that the claimant was diagnosed with a slight deformity at the acetabulum and femoral head on the right which had the appearance of a mild congenital right hip dislocation, as well as arthritis of the right hip (Tr. 269-270). This resulted in an assessment of bilateral developmental hip dysplasia with questionable

degenerative disease in the right hip (Tr. 272). He also reported hip and back pain when treated at Medicine Lodge Physicians Clinic (Tr. 279 -284).

On November, 19, 2010, consultative examiner William Cooper, D.O., assessed the claimant with bilateral congenital hip dysplasia, chronic right hip pain, and major depression and anxiety (Tr. 302). Upon exam, the claimant's gait was safe and stable, he could heel/toe walk, and he did not limp or use an assistive device, nor did he have identifiable muscle atrophy (Tr. 302).

On February 7, 2011, state reviewing physician Dr. Luther Woodcock determined that the claimant could perform light work with no additional postural or manipulative limitations (Tr. 330).

On April 4, 2011, Dr. Pedro Murati conducted an independent medical evaluation of the claimant and assessed him with: (i) left S1 joint dysfunction secondary to antalgia, (ii) right trochanteric bursitis secondary to antalgia, and (iii) lumbar sprain secondary to antalgia (Tr. 340). He stated that the claimant would require bilateral hip replacement in the future, and recommended cortisone injections to decrease inflammation in the present, as well as physical therapy and anti-inflammatory and pain medications (Tr. 340). He stated that the claimant needed a sit-down only job and to use a cane at all times (Tr. 341).

In her written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. She cited the claimant's treatment for his right hip pain from 2009 through 2013, but accorded limited weight to the state reviewing physician who found the claimant could perform light work, noting that the assessment

failed to "completely recognize the claimant's exertional limitation in terms of postural and ambulatory restrictions" (Tr. 24-29). She adopted the state reviewing physician's findings related to the claimant's mental impairments, then determined that he was not disabled (Tr. 29).

The claimant first contends that the ALJ erred by failing to properly consider his obesity. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately"; therefore, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*, 2002 WL 34686281, at *6. Here, the record reflects that the claimant's weight ranged from 224 to 237 (with attendant body mass indices of 30.38 to 33.05 pounds and he is five feet, eleven inches tall (Tr. 347, 351, 360, 409, 413, 417, 426, 430, 448, 451). The claimant argues that the ALJ failed to properly account for his obesity, but the ALJ *did* adequately discuss the claimant's physical and mental impairments and the reasons

for her RFC determination, there was no additional evidence or opinion in the case record, and she was not required to speculate about whether the claimant's obesity exacerbated the claimant's other impairments. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three— has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

The claimant further contends that the ALJ erred by failing to properly determine that his low back pain (and obesity) constituted a medically-determinable impairment, and was improperly excluded from the RFC assessment at step four. He asserts that the ALJ failed to specifically account for his decreased range of motion in his back, resulting in a "defective" RFC assessment. Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and her reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx.

816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545, 416.946. The ALJ found that the claimant could perform sedentary work with numerous postural limitations. The ALJ's failure to make a finding as to obesity or find that some type of pain constitutes an identifiable impairments is not reversible error where, as here, the claimant points to no evidence that these impairments – raised for the first time on appeal – impose any additional limitations. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

The claimant last contends that the ALJ erred in analyzing his credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias*, 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 16). As the claimant points out, use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not credible, including: (i) although he said he experienced lack of motivation constantly, he managed to get out and attend to daily activities, just not at previous levels; (ii) he had been noncompliant with prescribed medications allegedly due to lack of funds, but had indicated no attempts at low cost or free clinics; (iii) he sought few treatment measures except for pain medications, and was often noncompliant with follow-up treatment including injections, aerobic pool therapy, and mental health treatment; and (iv) his hearing testimony contradicted his written statements regarding his daily activities (Tr. 23-29).

"Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993), *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Here, the ALJ noted the times in the record when the claimant complained of pain and exhibited pain upon examination, when he reported pain getting worse, and when he reported that it improved. The Court specifically notes a record indicating the claimant himself reported a pain level of one or two out of ten in March 2013, following treatment and a release to home therapy. Furthermore, the ALJ accounted for the claimant's use of a cane and right hip pain in formulating his RFC, specifically finding that a state reviewing physician opinion that he could perform light work *did not* account for the claimant's postural and ambulatory restrictions (Tr. 29). These findings indicate she properly considered and accounted for the claimant's pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs

exist in the national economy that the claimant may perform *given the level of pain [he] suffers.*") [citation omitted].  The ALJ thus linked her credibility and pain determination to evidence as required by *Kepler*, and provided specific reasons for her determination in accordance with *Hardman*.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and her determination of the claimant's credibility is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.  The claimant's contentions are therefore without merit.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2016.

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**